Curia, per

O’Neall, J,
In this case, the deed is certainly as inartificial an instrument as ever was presented to a Court of Justice, and it might be enough to say to the plaintiffs, we can give no sensible construction to it, and therefore you must fail. But however badly the deed is drawn, and however difficult of construction it may be, it is our duty to make sense out of it, if we can. Objections were suggested on the argument here, such as that Richardson, the trustee, only took a life estate, which might be fatal to the plaintiffs’ case, yet as no such objection is made by the grounds of appeal, we shall not consider it now.
The ground, that Joab Wootan died in the lifetime of Eliz. Wootan, and took no interest whatever, under the deed, will be an insuperable obstacle to the plaintiffs : for the deed, construed as it ought to be, gives, in the first instance, to Elizabeth Wootan, a separate estate during life, or widowhood, should she outlive her husband ; but if she did not outlive him, then the land was to remain for the use of the grantor during his life, and at his death to Joab, and if he should die without issue, remainder to Ferlina Wootan ; but the personal property, if the wife died before her husband, was, at her death, to be the property of her son, James Runnells. Reading the deed in this way, and stopping at the first part, it is plain that neither Joab nor his heirs can claim under the deed. That this is the true reading of the deed, I have no doubt: for any other arrangement of the words would lead to the. absurdity, that *12 Joab should, at the death of Elizabeth Wootan, take the land, but if his father outlived her, he would get nothing at all. The true notion, is to read the words (“ if not, the said land to continue in the possession of the said John Wootan, during his natural life, then to belong to Joab Wootan, son of the above-mentioned John Wootan, and should he die without any lawful heir, belong to Ferlina Wootan ; the above-mentioned mare and cattle, and feather bed and furniture, at the decease of the said Elizabeth Wootan, then to be the just right and property of James Runnells, her son,”) as parenthetical. When so read, they are separated from the rest of the context, and make a case and state of things which need not be noticed, if it did not occur. As Elizabeth Wootan outlived her husband, the contingency on which the parenthesis was to come into the construction, has not happened. We might stop here. But this deed is so in artificially drawn, that I should be unwilling to say, the first part should control the subsequent. There are no technical parts in the deed before us. Hence, we may go on and give effect to the subsequent part. The first part, already adverted to, gives to Elizabeth, during life or widowhood, the estate; the deed however declares, inter alia, that the land should not be sold without- the consent of both parties (i. e. the husband and wife.) ■ This shows that during marriage it was to be the separate estate of the wife, subject to the husband in only one respect, to wit, the sale. Another clause' provides, that the increase, profits and emoluments shall be for the use and under the direction of the said Elizabeth. Then follows a clause declaring that the grantor grants, bargains, sells and confirms “the above-mentioned property, and all and every the increase of the property thereof, of every partandpar-cel thereof, to the said Elizabeth Wootan, her heirs and executors and administrators or assigns forever; and I, the said John Wootan, do hereby agree and declare the said property shall be the absolute right and property of the said Elizabeth Wootan and her heirs forever.” These last words plainly show that the whole property, real and personal, was to be to her and her heirs forever. The only rational supposition is, that the donor intended, if he out *13 lived his wife, to regulate by the deed how. the real and personal property should go ; if he died before her, to leave all in her hands, to be disposed of as she thought proper. I know no other construction which can give any sort of effect to most of the words used in this singular paper.
But if it were true, that the estate in the land was given to Elizabeth Wootan during life or widowhood, then to Joab Wootan, still I do not think that his heirs would take any thing. For even in that point of view, his estate is purely contingent, and dying before his step-mother, his heirs would have no estate. I am aware the leaning of the courts is against making a remainder contingent, but yet the vesting or not, depends upon the intention. If it appear that the remainderman was intended to have no interest until the contingency happens, the remainder will not be construed to vest. Fearne on Remainders, 238. Here the remainderman’s estate depends upon the word “ then? By construction, the grant would be to Elizabeth for life or widowhood ; when she dies or marries, then the estate is granted to the remainderman. This makes it purely contingent.
But there is another view fatal to the plaintiffs. Joab’s estate under this deed, without words carrying the fee, was a mere life estate. His death in the life time of his step-mother, ended his estate, whether vested or expectant.
It is apparent, under these views, the plaintiffs can never recover; to end the litigation, the court think it best to non-suit the plaintiffs,- which is accordingly ordered.
Richardson, Wardlaw and Frost, JJ. concurred.